[No. 44759. En Banc. January 26, 1978.]

GORDON OLSON, *Respondent,* v. THE UNIVERSITY OF
WASHINGTON, *Appellant.*

*Slade Gorton, Attorney General,* and *James B. Wilson, John Wasberg,* and *John R. Pettit, Assistants,* for appellant.

*Barnett, Pease, Doces & Lewicki, P.S.,* by *William Merchant Pease,* for respondent.

*James E. Kennedy* on behalf of Washington Association of Sheriffs and Police Chiefs, *Malcolm L. Edwards,* and *Charles K. Wiggins,* amici curiae.

HOROWITZ, J.—This appeal arises from the dismissal of respondent Gordon Olson from the University of Washington police department for acts of "window–peeking" at residential apartment units while on duty. Respondent appealed to the Higher Education Personnel Board, but the dismissal was affirmed. He then appealed to the Superior Court for King County, which reversed. The University of Washington's appeal, filed in the Court of Appeals, was certified to this court. We reverse the Superior Court and reinstate the order of the Higher Education Personnel Board dismissing respondent.

Gordon Olson was a police officer at the University of Washington for over 14 years and had attained the rank of sergeant at the time of his dismissal in December 1973. He had a good record of performance until that time. In early December of that year, Chief of University Police Shanahan requested an investigation of respondent's activities during his late night shift because he had received several reports that Olson was engaged in window peeking. Two University detectives observed respondent in full uniform peering through windows of lighted residential apartments in the early morning hours of December 2. These apartments are in a building complex leased in part to the University for office space. Respondent Olson was observed for approximately 1 hour, and the detectives positively identified him as the person whom they observed.

On December 4 respondent met with Chief Shanahan. The chief told him about the investigator's report and suggested that formal disciplinary measures would not be taken if respondent agreed to voluntarily request a reduced rank, sign a statement of wrongdoing, and seek professional

counseling. Respondent, after reading the report, agreed to the plan. He wrote and signed two statements—one admitting he had engaged in conduct which was wrong—the other requesting a reduction in rank "for personal reasons." A week later, however, respondent informed the chief he felt the "punishment" he had received was excessive and he intended to "seek redress." Chief Shanahan believed this action to be an abandonment of the voluntary agreement. He therefore promoted respondent to his former rank and initiated formal disciplinary proceedings for the first time by recommending respondent's dismissal to the University. Respondent apparently acquiesced in this proceeding, taking no further steps until the University informed him by letter of his dismissal, effective December 28. He appealed this action to the Higher Education Personnel Board (HEPB). The propriety of the procedures followed by the University, and by the HEPB on respondent's appeal, is not challenged.

The HEPB held 2 days of hearings on respondent's dismissal, then entered findings, conclusions, and an order affirming the University's action. The Board's findings covered the entire sequence of events, including the agreement between respondent and Chief Shanahan. It concluded respondent's acts of voyeurism constituted malfeasance and/or gross misconduct, and mistreatment or abuse of the public, grounds for dismissal under WAC 251–12–010(6), (7) and (10).

On respondent's appeal of this order in the Superior Court, the court reviewed the transcript and exhibits, heard oral arguments, and entered new findings substantially identical to those of the Board. The Superior Court concluded, however, that Chief Shanahan's conduct in entering into the voluntary arrangement violated respondent's right to due process of law. The trial court reasoned that the informal agreement prevented review of the action through the statutory appeals process, thereby denying respondent his right to due process. The trial court reasoned further that when respondent notified Chief Shanahan of his intent

to seek redress, the chief's conduct in recommending dismissal was arbitrary and capricious because it penalized respondent for exercising his right of appeal. The trial judge therefore reversed the dismissal and remanded to the HEPB, suggesting in his oral opinion that a reduction in rank would be an appropriate disciplinary measure. We have considered all contentions advanced by the parties and by amicus curiae. We do not agree with the conclusions of the trial court, and believe the issues discussed in this opinion are controlling. We therefore reverse and reinstate the Board's order affirming the dismissal.

As a preliminary matter we must determine the appropriate standard for review of the Board's order by the Superior Court. The HEPB was established by RCW 28B-.16, the State Higher Education Personnel Law. The stated purpose of this statute, enacted in 1969, was to establish a system of personnel administration designed specifically to meet the particular needs of employer–employee relations in institutions of higher learning. RCW 28B.16.010. *See also Cunningham v. Community College Dist. 3*, 79 Wn.2d 793, 798, 489 P.2d 891 (1971). One of the procedures established by the statute is an appeals process for disciplinary measures taken by a university. Sergeant Olson was entitled to appeal his dismissal to the HEPB, and the Board's order in turn could be appealed to the superior court of the county. RCW 28B.16.120–.160. The grounds for appeal to the superior court are stated in RCW 28B.16.150(1)(a)–(e).

The question arises whether the review procedure and standards provided by this specialized statute are subject to the broad provisions of the administrative procedures act, RCW 34.04. That act, adopted in 1959, was amended in 1967 to require that final agency decisions be reviewed under its provisions only, despite statutory procedures provided elsewhere in the code. Laws of 1967, ch. 237, § 6, p. 1216. The original statute also contained a list of exceptions from its application. Laws of 1959, ch. 234, § 15, p. 1088. Additions have been made to this list, the last having been in 1971, 3 years after the enactment of the State Higher

Education Personnel Law. *See* Laws of 1971, 1st Ex. Sess., ch. 57, § 17, p. 465. The list of exceptions to the application of the administrative procedures act does not include proceedings before the HEPB.

██ Exceptions to the application of statutes are narrowly construed. *Hall v. Corporation of Catholic Archbishop of Seattle,* 80 Wn.2d 797, 801, 498 P.2d 844 (1972). However, where the provisions of a general statute are in conflict with the provisions of a specific statute, the specific will prevail. *Knowles v. Holly,* 82 Wn.2d 694, 702, 513 P.2d 18 (1973). The State Higher Education Personnel Law, enacted 2 years after the amendment to the administrative procedures act calling for its broad and exclusive application, deals with the matter of higher education personnel specifically. It provides a detailed procedure for review of disciplinary measures. Thus, despite their absence from the list of exceptions to the application of the administrative procedures act, we hold that proceedings before the HEPB are not subject to that act. The provisions of the State Higher Education Personnel Law, specifically RCW 28B-.16.120–.160, govern review of the University's disciplinary action, and the proper standards for review of the Board's decision in this case are those set out in RCW 28B.16-.150(1)(a)–(e). We note, however, that the standards set out in RCW 34.04.130(6) for judicial review under the administrative procedures act do not differ substantially from those set out in RCW 28B.16.150(1). The result in this case would therefore be the same under either set of standards.

The trial court held, and respondent maintains here, that respondent was denied due process of law by Chief Shanahan's suggestion that they enter into an informal agreement, one which was not subject to statutory review procedures. It is also argued that his subsequent recommendation for dismissal was arbitrary and capricious because it penalized respondent for exercising his right to seek review. We disagree with these contentions, as we shall discuss below. But we cannot fail to point out that they are

irrelevant to the question of the legality of the order of the HEPB, the only issue before the court in this appeal.

■ RCW 28B.16.150 provides for judicial review of an order of the HEPB on one or more of the grounds stated. These grounds related to the propriety of the procedure, conclusions, and order of the Board. Review is limited under RCW 28B.16.160 to the transcript and exhibits of the Board hearings. Thus appellate review of a HEPB order is not a trial de novo. The grounds upon which respondent relies for reversal of the order, however, do not relate to the propriety of the Board's action on the formal dismissal proceedings, but rather to an event which occurred before those proceedings were initiated, and which was unrelated to the basis for dismissal. There is no contention here that the procedures followed by the University and the HEPB were improper. Neither does respondent contend his voyeurism was not sufficient grounds for dismissal. No nexus between the conduct of Chief Shanahan questioned here and the Board's affirmance of the University's decision to dismiss respondent has been shown. We hold therefore that in reversing the Board's order on the ground that Chief Shanahan's conduct was improper the trial court exceeded the proper scope of its review.

We also hold that respondent was not denied due process of law by Chief Shanahan's conduct. Respondent's theory is that the review of certain disciplinary actions by the HEPB provided in RCW 28B.16.120(2) creates a constitutional right to have review of all disciplinary measures. By initiating an informal disciplinary procedure not within the statutory framework, it is argued, Chief Shanahan denied respondent his constitutional right to have that procedure reviewed. We cannot agree.

Assuming arguendo the informal agreement was a disciplinary measure, it was not one to which the statutory right of review attached because respondent voluntarily requested the reduction in rank. He was not demoted by the University. Although respondent contends the chief's

conduct denied him review, only formal disciplinary proceedings could have provided a forum for such review. Respondent sought to avoid such proceedings, however, by voluntarily undertaking a rehabilitative effort.

■ Of course, respondent could have insisted that Chief Shanahan initiate formal proceedings in the first place in order to ensure review under the statute. By choosing the alternative, voluntary, and informal measure, respondent waived his right to have review with its attendant due process protections. The procedural due process rights which protect an employee in formal statutory review proceedings were not invoked. *Cf. State ex rel. Beam v. Fulwiler,* 76 Wn.2d 313, 316, 456 P.2d 322 (1969).

Yet only those rights and privileges of public employees created by statute are protected by the due process clauses of the state and federal constitutions. *Yantsin v. Aberdeen,* 54 Wn.2d 787, 345 P.2d 178 (1959). *See also State ex rel. Hood v. Personnel Bd.,* 82 Wn.2d 396, 401, 511 P.2d 52 (1973). There is no vested property right to public employment. *Yantsin v. Aberdeen, supra* at 788. Thus there is no constitutional right to due process apart from the protections afforded statutory rights. Since those statutory rights were not invoked, and only those rights are protected by due process, respondent was not deprived of due process by the informal agreement.

This disposes of respondent's second contention, that Chief Shanahan's conduct in recommending dismissal was arbitrary and capricious because it penalized respondent for exercising his right to obtain review. Respondent had no right to obtain review of the informal agreement. He waived any right to review by choosing an informal measure of rehabilitation instead of formal disciplinary proceedings. Thus Chief Shanahan's recommendation for dismissal did not impose a penalty on the exercise of any of respondent's rights. Furthermore, as pointed out already, the nature of Chief Shanahan's conduct is irrelevant to the proper scope of judicial review of the HEPB's order.

Respondent does not contend that the University's decision to dismiss him, or the HEPB's affirmance of that decision, were arbitrary or capricious. Although the trial court suggested in its oral opinion that dismissal may be too severe a penalty, it also pointed out that the court had no authority to determine an appropriate sanction. No argument has been advanced that the University could not properly dismiss respondent for his acts of voyeurism. In fact the trial court stated that dismissal would be justified. We find no proper basis for the trial court's reversal of the Board's order.

Reversed.

WRIGHT, C.J., HAMILTON, STAFFORD, UTTER, BRACHTEN-BACH, DOLLIVER, and HICKS, JJ., and HENRY, J. Pro Tem., concur.